# Exhibit A



# Presidential Documents

Order of August 14, 2020

## Regarding the Acquisition of Musical.ly by ByteDance Ltd.

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 721 of the Defense Production Act of 1950, as amended (section 721), 50 U.S.C. 4565, it is hereby ordered as follows:

**Section 1**. *Findings.* (a) There is credible evidence that leads me to believe that ByteDance Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands ("ByteDance"), through acquiring all interests in musical.ly, an exempted company with limited liability incorporated under the laws of the Cayman Islands ("Musical.ly"), might take action that threatens to impair the national security of the United States. As a result of the acquisition, ByteDance merged its TikTok application with Musical.ly's social media application and created a single integrated social media application; and

(b) Provisions of law, other than section 721 and the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*), do not, in my judgment, provide adequate and appropriate authority for me to protect the national security in this matter.

**Sec. 2**. *Actions Ordered and Authorized.* On the basis of the findings set forth in section 1 of this order, considering the factors described in subsection (f) of section 721, as appropriate, and pursuant to my authority under applicable law, including section 721, I hereby order that:

(a) The transaction resulting in the acquisition by ByteDance of Musical.ly, to the extent that Musical.ly or any of its assets is used in furtherance or support of, or relating to, Musical.ly's activities in interstate commerce in the United States ("Musical.ly in the United States"), is hereby prohibited, and ownership by ByteDance of any interest in Musical.ly in the United States, whether effected directly or indirectly through ByteDance, or through ByteDance's subsidiaries, affiliates, or Chinese shareholders, is also prohibited.

(b) In order to effectuate this order, not later than 90 days after the date of this order, unless such date is extended for a period not to exceed 30 days, on such written conditions as the Committee on Foreign Investment in the United States (CFIUS) may impose, ByteDance, its subsidiaries, affiliates, and Chinese shareholders, shall divest all interests and rights in:

  (i) any tangible or intangible assets or property, wherever located, used to enable or support ByteDance's operation of the TikTok application in the United States, as determined by the Committee; and

  (ii) any data obtained or derived from TikTok application or Musical.ly application users in the United States. Immediately upon divestment, ByteDance shall certify in writing to CFIUS that all steps necessary to fully and permanently effectuate the actions required under sections 2(a) and 2(b) have been completed.

(c) Immediately upon divestment, ByteDance shall certify in writing to CFIUS that it has destroyed all data that it is required to divest pursuant to section 2(b)(ii), as well as all copies of such data wherever located, and CFIUS is authorized to require auditing of ByteDance on terms it deems appropriate in order to ensure that such destruction of data is complete.

(d) ByteDance shall not complete a sale or transfer under section 2(b) to any third party:

(i) until ByteDance notifies CFIUS in writing of the intended recipient or buyer; and

(ii) unless 10 business days have passed from the notification in section 2(d)(i) and CFIUS has not issued an objection to ByteDance. Among the factors CFIUS may consider in reviewing the proposed sale or transfer are whether the buyer or transferee: is a U.S. citizen or is owned by U.S. citizens; has or has had a direct or indirect contractual, financial, familial, employment, or other close and continuous relationship with ByteDance, or its officers, employees, or shareholders; and can demonstrate a willingness and ability to support compliance with this order. In addition, CFIUS may consider whether the proposed sale or transfer would threaten to impair the national security of the United States or undermine the purpose of this order, and whether the sale effectuates, to CFIUS's satisfaction and in its discretion, a complete divestment of all tangible or intangible assets or property, wherever located, used to enable or support the operation of the TikTok application in the United States.

(e) From the date of this order until ByteDance provides a certification of divestment to CFIUS pursuant to section 2(b), ByteDance and TikTok Inc., a Delaware corporation, shall certify to CFIUS on a weekly basis that they are in compliance with this order and include a description of efforts to divest the interests and rights described in section 2(b) and a timeline for projected completion of remaining actions.

(f) Any transaction or other device entered into or employed for the purpose of, or with the effect of, evading or circumventing this order is prohibited.

(g) Without limitation on the exercise of authority by any agency under other provisions of law, and until such time as the divestment is completed and verified to the satisfaction of CFIUS, CFIUS is authorized to implement measures it deems necessary and appropriate to verify compliance with this order and to ensure that the operations of the TikTok application are carried out in such a manner as to ensure protection of the national security interests of the United States. Such measures may include the following: on reasonable notice to ByteDance and TikTok Inc., employees of the United States Government, as designated by CFIUS, shall be permitted access, for purposes of verifying compliance with this order, to all premises and facilities of ByteDance and TikTok Inc., and any of their respective subsidiaries, operated in furtherance of the TikTok application located in the United States:

(i) to inspect and copy any books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or under the control of ByteDance or TikTok Inc., or any of their respective subsidiaries, that concern any matter relating to this order;

(ii) to inspect or audit any information systems, networks, hardware, software, data, communications, or property in the possession or under the control of ByteDance or TikTok Inc., or any of their respective subsidiaries; and

(iii) to interview officers, employees, or agents of ByteDance or TikTok Inc., or any of their respective subsidiaries, concerning any matter relating to this order. CFIUS shall conclude its verification procedures within 90 days after the certification of divestment is provided to CFIUS pursuant to subsection (b) of this section.

(h) If any provision of this order, or the application of any provision to any person or circumstances, is held to be invalid, the remainder of this order and the application of its other provisions to any other persons or circumstances shall not be affected thereby. If any provision of this order, or the application of any provision to any person of circumstances, is held to be invalid because of the lack of certain procedural requirements, the relevant executive branch officials shall implement those procedural requirements.

(i) The Attorney General is authorized to take any steps necessary to enforce this order.

**Sec. 3**. *Reservation.* I hereby reserve my authority to issue further orders with respect to ByteDance, Musical.ly, Musical.ly in the United States, and TikTok Inc. as shall in my judgment be necessary to protect the national security.

**Sec. 4**. *Publication and Transmittal.* (a) This order shall be published in the *Federal Register.*

(b) I hereby direct the Secretary of the Treasury to transmit a copy of this order to the appropriate parties named in section 1 of this order.

THE WHITE HOUSE,
*August 14, 2020.*

[FR Doc. 2020–18360
Filed 8–18–20; 11:15 am]
Billing code 3295–F0–P

# Exhibit B



JUL 3 0 2020

David N. Fagan
Covington & Burling LLP
850 10th Street, NW
Washington, DC 20001

Michael E. Leiter
Skadden, Arps, Slate, Meagher, and Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

Re:  Case 20-100: ByteDance Ltd. (Cayman Islands; UBO: China)/U.S. Business of Musical.ly

Dear Messrs. Fagan and Leiter:

I am writing on behalf of the Committee on Foreign Investment in the United States (CFIUS or the "Committee") regarding CFIUS Case 20-100, involving the November 23, 2017, merger of a wholly owned subsidiary of ByteDance Ltd. ("ByteDance"), an exempted company with limited liability incorporated in the Cayman Islands and headquartered in Beijing, China, with and into musical.ly ("Musical.ly"), an exempted company with limited liability incorporated in the Cayman Islands (the "Transaction").

The purpose of this letter is to provide notice that CFIUS has identified national security risks arising from the Transaction and that it has not identified mitigation measures that would address those risks.  As a result of the Transaction, ByteDance merged the Musical.ly application ("app") with the TikTok app and created a single integrated social media app.  Today that integrated social media app—which retained the name TikTok—has amassed approximately 133 million registered users in the United States and collects extensive amounts of user data and content, behavioral data, and device and network data.  To the extent that they can be summarized at an unclassified level, the national security risks arising as a result of the Transaction include furthering the Chinese government's ability to: (1) access and exploit TikTok user data on millions of Americans; and (2) promote a pro-Chinese Communist Party (CCP) agenda in the United States through TikTok.

In conducting its analysis of whether a transaction poses national security risks, CFIUS assesses whether a foreign person has the intent and capability to take action to impair the national security of the United States (the "threat") and whether the nature of the U.S. business presents susceptibility to impairment of U.S. national security (the "vulnerability").  National security risk is a function of the interaction between threat and vulnerability, and the potential consequences of that interaction for U.S. national security.

In reaching its determination CFIUS relied upon both classified and unclassified information. The sources of unclassified information include: (1) material provided by ByteDance in response to approximately 50 questions from CFIUS before ByteDance submitted its May 27, 2020, joint notice (the "Notice"); (2) material provided by ByteDance during two meetings with CFIUS representatives on November 12, 2019, and March 27, 2020; (3) material provided by ByteDance in the Notice; (4) material provided by ByteDance in response to approximately 120 questions from CFIUS after ByteDance submitted its Notice;[1] and (5) phone calls held between ByteDance and representatives of the Committee. CFIUS also considered unclassified information obtained from press reports cited throughout this letter.

*CFIUS Assesses that ByteDance Poses a Threat to U.S. National Security*

In assessing whether ByteDance has the intent and capability to take action to impair U.S. national security, CFIUS considered the following unclassified information:

- China's National Security Law imposes broad obligations on citizens and corporations to assist and cooperate with the Chinese government in protecting national security including providing data, information, and technological support to security agencies, law enforcement agencies, and the military.[2] China's Cybersecurity Law similarly requires Chinese companies to store data within China, cooperate with crime and security investigators, and allow full access to data to Chinese authorities upon request.[3]

- In 2017, one of ByteDance's primary Chinese affiliates, Beijing ByteDance Technology Co., Ltd., established a Communist Party Committee in its governance structure led by the company's vice president Fuping Zhang. According to press reports, the Committee holds regular meetings attended by current and aspiring CCP members, CCP officials, and senior ByteDance leadership including founder and CEO Yiming Zhang. The meetings cover "doing a proper job of spreading positive energy" (reportedly a propaganda euphemism), "enhancing industry self-discipline," and "building a digital silk road."[4]

- In October 2018, Yiming Zhang was listed in the All-China Federation of Industry and Commerce's "100 outstanding private entrepreneurs at the 40th anniversary of reform and opening up." China's United Front Work Department was reportedly heavily involved in the selection of the list, which seeks business leaders who "resolutely uphold the Party's leadership, unswervingly go along the path of socialism with Chinese characteristics, and champion the reform and opening-up policies."[5]

---

[1] The material ByteDance provided in response to all questions is hereinafter referred to as "the Responses."
[2] "China Enacts New National Security Law," Covington & Burling LLP Web site, July 2, 2015 (accessed July 29, 2020, www.cov.com/~/media/files/corporate/publications/2015/06/china_passes_new_national_security_law.pdf).
[3] Jack Wagner, "China's Cybersecurity Law: What you need to know," *The Diplomat*, June 1, 2017 (accessed July 17, 2017, www.thediplomat.com/2017/06/chinas-cybersecurity-law-what-you-need-to-know).
[4] David Bandurski, "Tech Firms Tilt Toward the Party," *China Media Project*, May 2, 2018 (accessed July 17, 2020, www.chinamediaproject.org/2018/05/02/tech-firms-tilk-toward-the-party); Yaqiu Wang, "Targeting TikTok's privacy policy alone misses a larger issue: Chinese state control," *Quartz*, January 24, 2020 (accessed July 17, 2020, www.qz.com/1788836/targeting-tiktoks-privacy-alone-misses-a-much-larger-point).
[5] Danielle Cave, et. al., "Mapping China's Tech Giants: ByteDance," *Australian Security Policy Institute*, November 28, 2019 (accessed July 17, 2020, www.chinatechmap.aspi.org.au/#/company/bytedance).

- In April 2018, China's State Administration of Radio and Television publicly chastised ByteDance for hosting vulgar and insensitive content on two of its social media apps, Neihan Duanzi and Toutiao, and temporarily ordered their removal from app stores in China. In response, ByteDance discontinued Neihan Duanzi altogether and Yiming Zhang issued a public apology for failing to acknowledge that "technology must be led by the socialist core value system." Zhang further pledged to "deepen cooperation with authoritative media" and "elevate distribution of authoritative media content." ByteDance announced plans to educate its employees about socialist core values and committed to hiring 4,000 additional employees to monitor and censor content, also calling upon Chinese government representatives to supervise ByteDance's platforms.[6]

- ByteDance collaborates with public security bureaus across China, including in Xinjiang, where the Chinese government has detained an estimated 1.5 million religious and ethnic Uighur minorities. For example, ByteDance assisted the Beijing Radio and Television Bureau's "Xinjiang Aid" initiative to "propagate and showcase Hotan's new image" via propaganda on Douyin—the Chinese version of TikTok—following two years of mass detentions and the destruction of mosques, cemeteries, and traditional sites in Hotan.[7]

- ByteDance plays an active role in disseminating CCP propaganda throughout China, according to press reports.[8] More than 500 Chinese government entities at various levels have accounts on Douyin that they use to promote nationalist and socialist content as well as support the country's social credit system.[9]

- In September 2019, *The Guardian* reported on leaked TikTok content moderation documents that show ByteDance censored references to certain political leaders and specific groups, events, and issues under bans on "demonization or distortion of local or other countries' history," "foreign leaders and sensitive figures," and "highly controversial topics," including Tiananmen Square, Falun Gong, independence movements in Tibet and Taiwan, and religious content in certain countries. The reports also describe how certain content was made invisible to other users without being overtly removed from TikTok.[10]

---

[6] David Bandurski, "Tech Shame in the 'New Era,'" *China Media Project,* April 11, 2018 (accessed July 16, 2020, www.chinamediaproject.org/2018/04/11/tech-shame-in-the-new-era); "Open Apology from CEO of Toutiao Following the Ban of Neihan Duanzi," *Medium,* April 16, 2020 (accessed July 28, 2020, www.medium.com/@pandaily/open-apology-from-ceo-of-toutiao-following-the-ban-of-neihan-duanzi-6381000939d0).
[7] Danielle Cave, et. al., "Mapping China's Tech Giants: ByteDance," *Australian Security Policy Institute,* November 28, 2019 (accessed July 17, 2020, www.chinatechmap.aspi.org.au/#/company/bytedance).
[8] *Ibid.*; Rose Perper, "Report claims TikTok parent company ByteDance is working with China's Communist Party to spread propaganda on Xinjiang," *Business Insider,* November 29, 2019 (accessed July 28, 2020, www.businessinsider.com/tiktok-parent-company-bytedance-spreads-chinese-propaganda-report-2019-11).
[9] Meng Jing, "Government Agencies Jump on Short-Video Bandwagon to Ensure Chinese Youth Still Hears 'Official Voice,'" *South China Morning Post,* June 15, 2018 (accessed July 16, 2020, www.scmp.com/tech/china-tech/article/2150837/government-agencies-jump-short-video-bandwagon-ensure-chinese-youth); Louise Matsakis, "How the West Got China's Social Credit System Wrong," *Wired,* July 29, 2019 (accessed July 28, 2020, www.wired.com/story/china-social-credit-score-system).
[10] Alex Hern, "Revealed: How TikTok Censors Videos that Do Not Please Beijing," *The Guardian*, September 25, 2019 (accessed July 16, 2020, www.theguardian.com/technology/2019/sep/25/revealed-how-tiktok-censors-videos-that-do-not-please-beijing).

- According to a November 2019 report citing six former U.S.-based ByteDance employees, "moderators based in Beijing had the final call on whether flagged videos were approved [on TikTok]" and their "attempts to persuade Chinese teams not to block or penalize certain videos were routinely ignored, out of caution about the Chinese government's restrictions and previous penalties on other ByteDance apps."[11]

- TikTok spokespeople have repeatedly claimed, "[w]e have never provided user data to the Chinese government, nor would we do so if asked."[12] However, ByteDance acknowledged in the Responses that Chinese laws require companies incorporated in China to provide user data to which they have access.

***TikTok Has Vulnerabilities that the Chinese Government Can Exploit to Impair U.S. National Security***

In assessing the extent to which the nature of TikTok and the assets that support it present susceptibility to the impairment of U.S. national security, CFIUS considered the following unclassified information:

- According to the Notice and Responses, TikTok collects extensive amounts of user data and content,[13] behavioral data based on users' interaction with the app,[14] and device and network data associated with users' mobile devices on which the app is installed.[15]

- In the Responses, ByteDance described TikTok's algorithm as a "more sophisticated, personalized model for every user to predict their interest in a more precise and tailored fashion." According to industry press, "The AI-powered apps at ByteDance go to an extreme not common yet in the West."[16]

---

[11] Drew Harwell and Tony Romm, "Inside TikTok: A culture clash where U.S. views about censorship often were overridden by the Chinese bosses," *The Washington Post,* November 5, 2019 (accessed July 17, 2020, www.washingtonpost.com/technology/2019/11/05/inside-tiktok-culture-clash-where-us-views-about-censorship-often-were-overriden-by-chinese-bosses).

[12] Makena Kelly, "The U.S. government is considering a TikTok ban, says secretary of state," *The Verge,* July 7, 2020 (accessed July 20, 2020, www.theverge.com/2020/7/7/21316062/tiktok-band-app-mike-pompeo-government-china-bytedance-communist-party).

[13] Username, password, email address, phone number, name, nickname, birthday/age, profile thumbnail, biographical information, device contacts list, and third-party account information (*e.g.,* Facebook, Twitter, Google, Instagram, PayPal), videos, music, pictures, articles, hashtags, captions, comments, direct messages, and other material uploaded by users (including private or unpublished content users store on the app). TikTok collects further categories of data about users who become influencers pursuant to contracts with ByteDance, including nationality, ID photograph, home address, family relations, passport number, and driver's license number. However, only a limited number of TikTok users are influencers.

[14] Likes given, likes received, not interested, video playtime, share, follows, followers, block list, favorites, downloads, log-in history, browsing history, search history, keystroke patterns and rhythms, and purchase history.

[15] Internet Protocol address, cookie data, device identifiers, mobile carriers, network settings, time zone settings, app and file names and types, source of user, Android ID, Apple ID For Advertisers, Google Advertising ID, device model and characteristics (*e.g.,* screen resolution), operating system, list of installed apps, systems language and region, and geolocation-related data (including Global Positioning System data).

[16] Rebecca Fannin, "The Strategy Behind TikTok's Global Rise," *Harvard Business Review,* September 13, 2019 (accessed July 18,2020, www.hbr.org/2019/09/the-strategy-behind-tiktoks-global-rise).

- The current version of TikTok's privacy policy provided in the Notice states that "[w]e may disclose your information to respond to subpoenas, court orders, legal process, law enforcement requests, or government inquiries . . . ." The current version of the privacy policy further states that "[w]e may share your information with a parent, subsidiary, or other affiliate of our corporate group."

- ByteDance stores TikTok user data on servers hosted by Alibaba, a large Chinese Internet company. Press reports have revealed how large Chinese Internet companies including Alibaba actively support the Chinese government's intelligence, surveillance, and censorship efforts. They "openly act as the government's eyes and ears in cyberspace" and designate spaces in their offices for coordinating with representatives of the Chinese government.[17]

- ByteDance has 2,409 employees in China supporting TikTok with access to data for up to 133 million U.S. TikTok user accounts, according to the Responses. ByteDance is unable to account for how many queries of U.S. TikTok user accounts China-based personnel make, but on a global basis ByteDance employees query databases containing such data 4,200 times per day on average. U.S. and China-based ByteDance employees manage these internal databases and applications for operating TikTok, which do not have the capability to restrict permissions to access data based upon an employee's physical location in China, according to the Responses.

- ByteDance regularly provides software updates for TikTok written by engineers based in China, and the company stated in the Responses that "China-based personnel will continue to have a critical role in delivering the software, on both the front-end applications and the backend, to power the TikTok app user experience." ByteDance confirmed in the Responses that app stores have in the past flagged issues with the updates ByteDance has provided before making such updates available for users to download.

- In the beginning of 2020, Apple "fixed a serious problem in iOS where apps could secretly access the clipboard on users' devices inquiries . . . one of the apps caught snooping by security researchers was China's TikTok."[18] When asked about the app's access to users' device clipboards, a TikTok spokesperson first cited an "outdated Google advertising software development kit" that was since replaced. When asked again several months later after the Apple update showed continued clipboard access by TikTok the spokesperson claimed the access was "triggered by a feature designed to identify repetitive, spammy behavior" and was being remedied through a software update, according to the Responses.

---

[17] Liza Lin and Josh Chin, "China's Tech Giants Have a Second Job: Helping Beijing Spy on Its People," *The Wall Street Journal,* November 30, 2017 (accessed July 17, 2020, www.wsj.com/articleschinas-tech-giants-have-a-second-job-helping-the-government-see-everything-15120556284).

[18] Zak Doffman, "Warning: Apple Suddenly Catches TikTok Secretly Spying on Millions of iPhone Users," *Forbes,* June 26, 2020 (accessed July 22, 2020, www.forbes.com/sites/zakdoffman/2020/06/26/warning-apple-suddenly-catches-tiktok-secretly-spying-on-millions-of-iphone-users).

In assessing the consequences, CFIUS considered the potential effects on national security that could reasonably result from the exploitation of the vulnerabilities by the identified threat actors, and concluded that such effects could impair the national security of the United States.

Based upon the Committee's national security expertise and judgement, CFIUS has considered the feasibility of mitigation measures to address the national security concerns posed by the Transaction, including the proposals ByteDance submitted to the Committee on July 15, 2020, and July 29, 2020. The Committee considered that as ByteDance currently operates, company leadership and personnel in China remain significantly involved in both the day-to-day operations and broader strategic direction of TikTok, reducing the likelihood that any U.S.-based personnel could successfully detect, disclose, and defeat actions to impair U.S. national security.

CFIUS also considered press reports that indicate that ByteDance has not fully complied with its binding obligations to the U.S. Government in another context.[19] In light of these considerations, CFIUS has concluded that the proposals do not adequately address the identified national security concerns. For a mitigation measure to feasible it must be effective, monitorable, and enforceable over a sustained period of time.

CFIUS has not identified any mitigation measures that could be negotiated or imposed to address all sources of national security risk arising from the Transaction. Accordingly, the Committee anticipates that it will refer the matter to the President for decision. CFIUS considers referrals to the President when it has not identified a reasonable way to mitigate the national security risk.

ByteDance may promptly provide CFIUS with additional relevant information for its consideration.

Sincerely,

Thomas P. Feddo
Assistant Secretary
Investment Security

---

[19] Explainer: How the U.S. Seeks to Protect Children's Privacy Online," *The New York Time,* July 8, 2020 (accessed July 18, 2020, www.nytimes.com/reuters/2020/07/08/technology/08reuters-tiktok-privacy-children-explainer).

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2020, I filed the foregoing Underlying Decision through the CM/ECF system, which will send a notice of filing to all registered CM/ECF users.

*s/ Beth S. Brinkmann*
Beth S. Brinkmann
